J-S03031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2453 EDA 2022 |

Appeal from the Order Entered August 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001864-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: L.E.C.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2454 EDA 2022 |

Appeal from the Decree Entered August 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000076-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.C., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 2455 EDA 2022 |

Appeal from the Order Entered August 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001865-2015

J-S03031-23

| | | |
|---|---|---|
| IN THE INTEREST OF: L.T.S.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2456 EDA 2022 |

Appeal from the Decree Entered August 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000077-2020

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 11, 2023**

T.C. ("Mother") appeals from the decrees granting the petitions filed by the Philadelphia Department of Human Services ("DHS") involuntarily terminating her parental rights to her son, L.S., a/k/a L.E.C.-S., born in June 2013, and her daughter, L.S.-C., a/k/a L.T.S.-C., born in February 2015 (collectively, "Children").[1]  Mother also appeals from the orders changing Children's permanency goals from reunification to adoption.  Following our review, we affirm the termination decrees and dismiss the appeals from the goal change orders as moot.

The relevant facts and procedural history are as follows.  DHS became aware of the family in July 2018 after it received a General Protective Services

_____

[1] The trial court also voluntarily terminated the parental rights of L.E.S. ("Father") to Children.  Father did not file an appeal and is not a party to the instant appeal.

- 2 -

("GPS") report. The GPS report alleged that Mother struggled with crack cocaine abuse and the family's home was uninhabitable because it did not have electricity, running water, or food. *See* N.T., 6/13/22, at 49. Thereafter, in July 2018, DHS obtained orders of protective custody for Children. At this time, Children were placed with their paternal aunt, M.S. ("Paternal Aunt"), where they have remained. *See id*. at 52; *see also* N.T., 4/26/22, at 6. At a shelter care hearing on July 23, 2018, the trial court ordered legal custody to DHS and ordered Children's temporary commitment to stand. On August 2, 2018, the court adjudicated Children dependent.

In furtherance of Children's permanency goal of reunification, Mother was required to comply with the following single case plan ("SCP") objectives: (1) complete a dual diagnosis assessment; (2) submit to random drug screens; (3) comply with Community Umbrella Agency ("CUA") case management; (4) attend Achieving Reunification Center ("ARC") for housing, parenting, and financial counseling; and (5) maintain supervised visitation. *See* N.T., 6/13/22, at 53-54. During the pendency of the case, Mother failed to complete any of her objectives. *See id*. at 69. Mother never completed a dual diagnosis assessment, did not submit to any drug screens, and did not provide documentation that she has participated in drug or alcohol treatment. *See id*. at 54-55, 64-65. Additionally, despite being referred to ARC, she did not engage these services, and by February 2022, she had not visited or seen Children for approximately three years. *See id*. at 54-55, 64-65, 71.

On February 17, 2022, DHS filed petitions to change Children's permanency goals from reunification to adoption and for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On April 26, 2022, June 13, 2022, August 16, 2022, and August 26, 2022, the trial court conducted hearings. Children, then ages seven and nine, were represented by a guardian *ad litem* ("GAL") and separate legal counsel.[2] DHS presented the testimony of CUA case manager Raymond Bynes ("Mr. Bynes"). The GAL presented the testimony of Molly Reeves, a trauma clinician for L.S.-C. Mother, who was represented by counsel, also testified.

The testimony presented at the various hearings was as follows. Mr. Bynes testified that Mother had made no progress toward completing her ARC objectives, and that she was no closer to reunification with Children by the time of the hearing than she had been at the dependency adjudication hearing in 2018. *See* N.T., 6/13/22, at 69. Mother never completed a dual diagnosis assessment, did not submit to any drug screens, and did not provide documentation that she has participated in drug or alcohol treatment. *See*

---

[2] The trial court appointed counsel to represent Children's legal interests at the June 13, 2022 hearing. Children's counsel was subsequently appointed to the judiciary and consequently withdrew; on July 22, 2022, the court appointed new counsel for Children. The trial court continued the case to allow Children's new legal counsel the opportunity to interview them, and on August 26, 2022, the trial court reopened the record solely to hear second counsel's report on Children's preferred outcome.

*id*. at 54-55, 64-65. Mr. Bynes testified that, prior to DHS filing the petitions on February 17, 2022, Mother had not attended any visits with Children since 2019. *See id*. at 65, 73-74. Mr. Bynes referred Mother to ARC for parenting, housing, and financial counseling, but she did not engage these services until after the petitions were filed. *See id*.[3]

Mother admitted that she has not seen Children "in quite some time." N.T., 4/26/22, at 27; *see also* N.T., 6/13/22, at 54-55, 64-65, 71 (testimony regarding Mother's admission that she had not seen Children for approximately three years). Mother conceded that she has been in and out of jail since Children were adjudicated dependent. *See* N.T., 4/26/22, at 27-28. She testified that she participated in an inpatient program "at Fairmount" and was on a waitlist for an outpatient program. *Id*. at 28-29. Additionally, Mother stated she is willing to complete a dual diagnosis assessment at the courthouse and was willing to submit to a drug screen. *Id*. at 29. Mother did not testify as to why she failed to comply with any of her SCP objectives.

Mr. Byrnes testified that Paternal Aunt provides Children with love, safety, stability, and support, and that she meets their emotional, medical, educational, developmental, and daily needs. *See* N.T., 6/13/22, at 70-71. Mr. Bynes testified that Children never asked for Mother, and whenever

---

[3] Mr. Bynes also testified that, prior to April 2022, he was only able to speak with Mother three times, exclusively over the telephone, despite numerous attempts to reach her. *See* N.T., 6/13/22, at 60-61.

Children were dealing with behavioral issues, they looked to Paternal Aunt. *See id*. at 74-76, 79. He further testified that Children have not received cards or telephone calls from Mother on their birthdays, Mother has never attended any medical appointments, and she has never attended any school meetings. *See id*. at 79-80. Mr. Bynes also testified that L.S., the older male child, has dealt with some "hardships," but he is involved in a "Tiger program" that helps with his behavioral issues, and Paternal Aunt has been extremely supportive. *See id*. at 74. Mr. Bynes opined that Children share the primary bond with Paternal Aunt, he had no knowledge of any parent/child bond between Children and Mother, and Children would not suffer irreparable harm if Mother's parental rights were terminated. *See id*. at 70-71.

Ms. Reeves, trauma clinician for L.S.-C, the younger female child, testified that she has worked with L.S.-C. for two and a half years and that L.S.-C. has only talked about Mother "a few times but nothing that really stands out." *Id*. at 89-90. L.S.-C. was referred to Ms. Reeves due to her trauma history, and when she was first referred, she was experiencing "frequent temper tantrums, emotional dysregulation, physical aggression, [and] sleep troubles." *Id*. at 88. Ms. Reeves testified that L.S.-C. has improved significantly over the years stating that "[h]er temper tantrums at home were almost non-existent. She was still having some difficulty in school but she has definitely improved a lot with her emotional dysregulation." *Id*. Ms. Reeves further testified that Paternal Aunt is very involved with L.S.-C.'s

treatment and has learned skills to support L.S.-C's emotional regulation. **See id**. at 89.

At the June 13, 2022 hearing, Children's first counsel reported that L.S. was conflicted about the termination of Mother's parental rights and being adopted. L.S. stated, through counsel, that he did not want Mother's parental rights terminated nor did he want to be adopted; but he then stated he did want to be adopted by Paternal Aunt, though he still wanted to see Mother. **See id**. at 95. Counsel also reported that L.S.-C. did not want to be adopted and that she would be upset if she did not get to see Mother. **See id**. At the August 26, 2022 hearing, Children's second counsel, following the withdrawal of prior counsel, reported that L.S. "absolutely said he wanted to continue to live with his aunty, and he wanted . . . her to adopt him," though he would still like to see Mother. **See** N.T., 8/26/22, at 5-6. Children's second counsel also explained that while he attempted to have a discussion with L.S.-C., he found that she was "unable to," though counsel ascertained that L.S.-C. would like to live with Mother, but also wanted to continue living with Paternal Aunt. **See id**. at 6-7.

By decrees dated and entered on August 26, 2022, the trial court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). In addition, by orders entered the same date, the court changed Children's permanency goals to adoption. Mother filed timely notices of appeal and concise statements of errors complained of

on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Pursuant to Rule 1925(a), the trial court filed an opinion, referring to its reasoning stated on the record at the August 26, 2022 hearing. On October 31, 2022, this Court consolidated Mother's appeals *sua sponte*.

Mother presents the following issues for our review:

1.  Whether the trial court erred and/or abused its discretion when it [involuntarily] terminated Mother's parental rights, where such determination was not supported by clear and convincing evidence under the Adoption Act[,] 23 Pa.C.S.[A.] § 2511(a)?

2.  Whether the trial court erred and/or abused its discretion when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical[,] and emotional needs of [] Child[ren] under [s]ection 2511(b) of the Adoption Act?

3.  Whether [] Children were adequately represented by an attorney when their attorney was vacated sometime after the evidence closed but before closing argument and the court's decision, when their new attorney had not heard any of the evidence, nor had any reported consultation with the attorney who had heard the evidence, and had observed [] Children with their Mother, and had a different position from the original attorney[?]

4.  Whether the trial court erred and/or abused its discretion by changing [] Children's permanency goals to adoption when DHS had not met its burden of proof that such changes would best serve the needs and welfare of [Children?]

Mother's Brief at 6-8 (footnote omitted; issues re-ordered for ease of disposition).

Our standard of review is as follows:

> [I]n cases involving involuntary termination of parental rights[, our review] is limited to determining whether the trial court's determination is supported by competent evidence. When applying this standard of review, an appellate court must accept the findings of fact and credibility determinations of the trial court if they are supported by evidence of record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. An abuse of discretion is found where there is a demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. It matters not that an appellate court might have reached a different conclusion, as it is well-established that absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.

*In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021) (internal citations omitted).

Pennsylvania's Adoption Act ("the Act") governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Subsection 2511(a) provides grounds for the involuntary termination of parental rights. If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in subsection (a), the court must then consider whether termination would best serve the child under subsection (b). *See id*. § 2511(b). This Court need only agree with one of the grounds set forth in subsection (a) to affirm, provided subsection (b) is also satisfied. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). As we need only agree with

the trial court's determination as to one section of 2511(a), we limit our discussion to section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

In her first issue, Mother argues that DHS failed to provide clear and convincing evidence that Mother's rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1).  **See** Mother's Brief at 15-16.  This Court has explained that grounds for the involuntary termination of parental rights arise under section 2511(a)(1) when a parent demonstrates a settled purpose of relinquishing parental claim to child or fails to perform parental duties.  **See**
**In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations

omitted, emphasis added). Regarding the definition of "parental duties," this Court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and indentation omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this Court has instructed, "[i]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and

not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case." *In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (internal citations omitted). This requires that the Court "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d at 855 (internal citation omitted).

Once the evidence establishes a parent's failure to perform parental duties, or a settled purpose of relinquishing parental rights, "the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d at 730. Further, we have stated:

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (internal citation omitted).

In her first issue, Mother contests the sufficiency of the evidence supporting the trial court's finding of grounds for termination.[4] Specifically, Mother argues that the testimony of Mr. Bynes was insufficient for the court to find clear and convincing evidence under section 2511(a)(1). **See** Mother Brief at 20-21.

With respect to Mother's claim that Mr. Bynes's testimony was insufficient to terminate her parental rights under section 2511(a)(1), the trial court explained as follows:

_____

[4] Mother contends that the trial court improperly allowed, and relied on, hearsay testimony from Mr. Bynes. **See** Mother's Brief at 16. The GAL contends that Mother's argument regarding inadmissible hearsay is waived for failure to assert this error in her concise statement of errors complained of on appeal. **See** GAL Brief at 10-11.

We observe that, because Mother did not include her hearsay issue in her Rule 1925(b) statement, the trial court did not address this argument in its Rule 1925(a) opinion; we further note that Mother also did not raise this issue in her statement of questions involved in her brief. **See** Pa.R.A.P; 1925(b)(4)(vii) (providing that issues not included in the concise statement of errors complained of on appeal are waived); **see also** Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby"). Additionally, Mother fails to cite to the places in the record where she lodged hearsay objections to Mr. Bynes's testimony, apart from a single instance where she objected to Mr. Bynes testifying about Mother's contact with CUA during the pendency of the case. **Compare** Mother's Brief at 16 (citing N.T., 6/13/22, at 55-56) **with** Pa.R.A.P. 2119(e) (requiring that parties set forth a reference to the place in the record where the appellate issue was raised below). As such, we conclude that Mother has waived her claim regarding the court's consideration of allegedly inadmissible hearsay evidence. **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (stating that "it is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived").

The [petitions] in this case were filed on February 17, 2022. In the six months preceding that time, [Mother] did not establish or take any action to demonstrate any parental claim to [Children].

She did not engage in any of her [SCP] objectives, she did not have visits [with Children] for several years prior to the [termination] petition being filed, and [DHS] has met its burden under [section] 2511(a)(1).

N.T., 8/26/22, at 11-12.

Following our review, we conclude the evidence was sufficient to support the trial court's conclusion. On direct examination, Mr. Bynes, the CUA case manager, testified that Mother's compliance with her ARC objectives was minimal and that she was no closer to unification with Children by the time of the hearing than she was in 2018. **See** N.T., 6/13/22, at 69. Mother never completed a dual diagnosis assessment, did not submit to any drug screens, and did not provide documentation that she has participated in drug or alcohol treatment. **See id**. at 54-55, 64-65. Importantly, prior to DHS filing the petitions on February 17, 2022, Mother did not attend any visits with Children since 2019. **See id**. at 65, 71, 73-74. Mr. Bynes referred Mother to ARC for parenting, housing, and financial counseling, but she did not engage these services until after the petitions were filed. **See id**.; **see also** 23 Pa.C.S.A. § 2511(b) (providing that efforts by a parent made after the filing of a termination petition may not be considered when termination is sought pursuant to subsection (a)(1)). Based on the foregoing, the record supports the court's determination that Mother failed to perform her parental duties in

excess of the six months prior to the filing of the February 17, 2022 termination petitions. As we discern no error of law or abuse of discretion, Mother is due no relief.

In her second issue, Mother contends that the trial court abused its discretion by finding that termination of his parental rights was in Children's best interest pursuant to section 2511(b). Regarding the section 2511(b) best interest analysis, this Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the [trial] court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship. . . ..

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (internal citations, quotations, brackets, and indentation omitted). Furthermore, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). In weighing the bond considerations pursuant

- 15 -

to section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. Children "are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Mother argues that because DHS failed to meet its burden under section 2511(a), the trial court erred in analyzing section 2511(b). Mother's Brief at 12-13, 21. Alternatively, Mother contends that the court failed to give primary consideration to the emotional needs of Children. *See id*. at 21. Mother argues that the court must analyze the impact of severing "close parental ties" and the resulting pain this may cause when considering the best interests of Children. *See id*. at 23.

The trial court explained its section 2511(b) analysis as follows:

> With regard to [section] 2511(b) while [Children] may know [Mother], and enjoy the brief times they've had to spend with her for the last four years, they do not have a parental bond with [Mother].
>
> [Children] have both indicated they wished to be living in the home of their current resource parent, and I do not believe [Children] would suffer any irreparable harm if [Mother's] rights were terminated.

N.T., 8/26/22, at 15-16.

Following our review, we conclude that the trial court's finding is supported by the record and contains no error of law. As stated *supra*, Mother did not visit Children and she had not seen Children for approximately three years. *See* N.T., 6/13/22, at 54-55, 64-65, 71. Additionally, Mr. Bynes

testified that Paternal Aunt provides Children with love, safety, stability, and support, and that she meets their emotional, medical, educational, developmental, and daily needs. *See id*. at 70-71. Conversely, Mother met none of Children's emotional, medical, educational, developmental, or daily needs; Mother had no bond with Children; and Mr. Bynes opined that termination of Mother's parental rights would not cause irreparable harm to Children. *See id*. Mr. Bynes testified that Children never asked for Mother, and whenever Children were dealing with behavioral issues, they looked to Paternal Aunt. *See id.* at 74-76, 79, 88-90. The record this supports the trial court's conclusion that termination of Mother's parental rights was in Children's best interest. Accordingly, Mother is due no relief.

In Mother's third issue, she argues that Children received inadequate representation such that they were effectively denied counsel. Section 2313(a) of the Adoption Act provides that the "court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents." *See* 23 Pa.C.S.A. § 2313(a); *see also In re Adoption of K.M.G.*, 240 A.3d 1218, 1223–24 (Pa. 2020). (holding that "[s]ection 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.*[,] the child's preferred outcome, and the failure to appoint counsel constitutes structural error in the termination proceedings") (internal quotations omitted).

Mother asserts that Children were "effectively denied the assistance of counsel where their attorney at the time of the court's decrees had not heard any of the evidence in the case, and where his report of [Children's] wishes and relationship to [Mother] was significantly different from the report of their previous attorney." Mother's Brief at 29. Mother submits that Children's first attorney provided a "more complete" report that supports a finding that Children prefer a permanency goal other than adoption. *See id*. at 31-32. Mother concludes that the "break in representation" is error. *See id*. at 32.

We must first consider whether Mother has preserved this issue for our review. Mother did not raise this issue before the trial court, nor did she raise it in her Rule 1925(b) statement; however, she asserts that the failure to appoint counsel is non-waivable and may be raised by a parent for the first time on appeal. *See* Mother's Brief at 29. While Mother's statement of the law is correct, the trial court did not *fail* to appoint counsel for Children in the instant matter. Rather, the first appointed counsel for Children was permitted to withdraw and replacement counsel for Children was thereafter appointed. Moreover, Mother's arguments pertain to the *adequacy* of replacement counsel's representation. Our Supreme Court has also disallowed *sua sponte* review by appellate courts of the *adequacy* of legal counsel's representation. *See In re Adoption of K.M.G.*, 240 A.3d at 1237 (holding that "[w]e additionally reject the argument that appellate courts should review *sua sponte* whether a GAL/[c]ounsel sufficiently advocated for the child's legal

interests . . ..").  Accordingly, Mother has waived this issue.  **See** Pa.R.A.P. 302(a); **see also** Pa.R.A.P. 1925(b).[5]

In Mother's fourth and final issue, she contests the trial court's orders changing Children's permanency goals from reunification to adoption.  **See** Mother's Brief at 24-28.  However, given our disposition affirming the termination decrees, Mother's appeals from the goal change orders are moot. Therefore, we dismiss the appeal in this respect.  **See In the Interest of D.R.-W.**, 227 A.3d 905, 917 (Pa. Super. 2020) (holding that an appeal from a goal change order is moot when this Court affirms a decree involuntarily terminating parental rights).

_____

[5] Even if Mother had preserved a challenge to the adequacy of second counsel's representation, we would conclude that Mother's issue merits no relief.  On June 13, 2022, and August 26, 2022, the trial court heard from Children's original legal counsel regarding Children's preferred outcome. Children's original counsel stated Children's desires on the record on June 13, 2022.  He stated that Children want to continue to have contact with Mother but want to stay with Paternal Aunt.  **See** N.T., 6/13/22, at 94-95.  He also reported that while L.S.-C. did not want to be adopted, L.S. was conflicted. **See id**. at 94-95.  Subsequently, Children's original counsel withdrew his appearance.  Second counsel spoke with Children and stated their preferred outcome on the record at the hearing on August 26, 2022.  Second counsel also stated that Children enjoy seeing Mother, but want to continue living with Paternal Aunt.  **See** N.T, 8/26/22, at 5-7.  Second counsel reported that L.S. affirmatively wanted to be adopted and that L.S.-C. was largely unable to discuss the matter with him, but that, from what he could discern, she wanted to live with both Mother and Paternal Aunt.  **See id**. at 6-7.  A review of the record shows that Children were represented by counsel at each involuntary termination hearing, and each attorney interviewed Children and reported their preferred outcomes to the trial court.  Accordingly, had Mother preserved this issue, we would have concluded that the trial court complied with section 2313(a).

Termination decrees affirmed. Appeals from goal change orders dismissed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2023